UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD BEDEN,

    Plaintiff,

v.                                                                     Case No. 2:05-cv-156
                                                                      HON. ROBERT HOLMES BELL

RUSSEL BLAIR, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Ronald Beden, an inmate currently confined at the Chippewa Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants Assistant Resident Unit Manager Russell Blair, Administrative Deputy Warden Lisa Tribley, Sergeant Gary LaFave, Deputy Warden Kim Bakker and Warden Jerri-Ann Sherry.

Plaintiff's complaint alleges that he was transferred to the Newberry Correctional Facility on April 28, 2003. On May 11, 2003, plaintiff requested a move from the unit because of undesirable conduct of other prisoners. Plaintiff spoke to the third shift Resident Unit Officer about his concerns on May 26, 2003. Plaintiff was then moved to Housing Unit 4 at the facility. Unit 4 Assistant Resident Unit Manager defendant Russell Blair asked plaintiff "how did you get into my unit?" Plaintiff responded that he was moved due to problems that he was having with other prisoners. Defendant Blair told plaintiff that he was being moved to another unit based upon an order of Defendant Deputy Warden Tribley.

Plaintiff went to see Deputy Warden Tribley that day. Plaintiff alleges that the Deputy Warden was agitated and upset about plaintiff's move. Defendant warned plaintiff to move

to housing unit 10 or be placed in the hole and that he was going to be denied Kosher meals and religious services. Plaintiff alleges that defendant told him that "Jews are white and you are not Jewish." Plaintiff alleges that defendant Blair stated that he was going to retaliate against plaintiff, because plaintiff refused to become Christian.

Plaintiff packed up his personal property and asked to see a shift commander. The request was denied and plaintiff alleges that he was placed in the hole for refusing to move. Plaintiff alleges that defendant Blair searched plaintiff's personal property and found alleged gang related materials. A Notice of Intent to Conduct an Administrative Hearing was issued on May 28, 2003. On May 29, 2003, an administrative hearing was held. Plaintiff was released from segregation and placed in Housing Unit 10. Inmate Holyfield informed plaintiff that defendant Blair had removed property from plaintiff's footlocker. No contraband removal form or misconduct ticket was issued. Plaintiff then learned that the items had been provided to the Security Threat Group (STG) Coordinator. On June 16, 2003, plaintiff received a Notice to Conduct an Administrative Hearing. The alleged STG materials were identified as seven letters, one magazine article, one packet of sketches and two pieces of paper. Plaintiff was interviewed by defendant LaFave on July 3, 2003. Plaintiff alleges that LaFave asked plaintiff to renounce his Jewish faith or plaintiff would be placed in segregation. Plaintiff alleges that he refused to sign the form. Plaintiff was then taken to segregation. Plaintiff alleges that defendant Bakker characterized the materials confiscated from plaintiff as Rastafarian literature for purposes of classifying plaintiff as an STG II prisoner, in order to place plaintiff in a higher security level prison. Plaintiff was then transferred to Alger Maximum Correctional Facility (LMF), moving him to a level V facility from a level II facility. Plaintiff alleges that defendant Sherry approved the transfer.

On July 7, 2003, plaintiff alleges that he visited with LMF Security Classification Committee members who stated that they had no information and did not know why plaintiff was designated an STG II prisoner or transferred to LMF. Plaintiff was informed on July 9, 2003, that the Lansing Office approved his status as an STG II prisoner. On October 9, 2003, a hearing was held where it was allegedly determined that plaintiff's personal property did not violate any policy and could be returned. Plaintiff denies that he is Rastafarian, but asserts that his faith is Orthodox Judaism. Plaintiff states that he was discriminated against based upon his religious faith and ethnic background. Plaintiff alleges that defendants designated him as an STG II prisoner to discriminate and retaliate against plaintiff.

Plaintiff alleges that on August 6, 2004, he did sign a renunciation form when it became apparent that he would continue to reside at a level V prison and be classified as an STG II prisoner unless he signed the form. Plaintiff alleges that he is still classified as an STG II prisoner.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad*

*v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that they were not personally involved in issuing plaintiff's STG designation. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984). Defendants did not designate plaintiff as an STG II prisoner. Plaintiff apparently is still designated an STG II prisoner. Plaintiff alleges that defendants discriminated against him and retaliated against him by planning to have plaintiff designated an STG prisoner and transferred to a new prison.

Defendant Blair explained that he initially denied plaintiff's request to transfer to Housing Unit 4, since it is not normal practice to grant a prisoner's simple request for a transfer. A few days later, defendant Blair learned that plaintiff had convinced a third shift commander to place plaintiff in Unit 4 based upon a claim that plaintiff was having problems with prisoners in Unit 3. At that time, defendant Blair did not know the reason why plaintiff wanted to be moved to Unit 4.

Defendant Blair later learned that plaintiff wanted to be locked in the same unit as prisoner Holyfield. Defendant Tribley ordered that plaintiff would be moved from Unit 4 to Unit 10. Plaintiff was upset with the order and refused to move. A resident unit officer packed up plaintiff's property and confiscated some materials. The materials were given to defendant Blair who itemized the writings and drawings and issued a Notice of Intent to Conduct Administrative Hearing. The materials were then given to Acting Security Threat Group Coordinator defendant Gary LaFave. As the Security Threat Group Coordinator, it was defendant LaFave's responsibility to monitor STG activities, and identify STG members or leaders at the prison. Defendant LaFave then sent that information to the MDOC Central Office STG Coordinator with a recommendation regarding STG designation. When defendant LaFave received plaintiff's materials he determined some to be tattoo art with an attempt to combine Rastafarian and Jewish symbols. Plaintiff had created a symbol "GRAFT 'T', Inc." The G was upside down which displays disrespect for an STG known as the Gangster Disciples commonly known as the "G's." The symbol identified the "Grand Rastafarian Temple, Inc." The "Grand Rastafarian Temple, Inc." was written about in a letter plaintiff had from prisoner Holyfield, which included bylaws and appeared semi-military in nature. Defendant LaFave also learned that guards were posted outside the doors during meetings that plaintiff had with this organization. According to defendant LaFave, plaintiff admitted to associating with other prisoners involved in Intolerant/Subversive groups. When plaintiff was asked to renounce affiliation with the group, plaintiff claimed that he was being asked to renounce his religion. Plaintiff refused to renounce his affiliation with the group, so defendant LaFave requested that plaintiff receive an STG designation.

Under these circumstances, it does not appear that defendants took any discriminatory action or retaliated against plaintiff. To establish a violation of the Equal Protection Clause, a prison

inmate must prove that a discriminatory intent or purpose against a disfavored class or excluded group was a factor in an action taken by prison officials. *See McCleskey v. Kemp*, 481 U.S. 279 (1987); *Heckler v. Mathews*, 465 U.S. 728 (1984); *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 265 (1977). Plaintiff alleges that defendants discriminated against him because he is an Orthodox Jew. Plaintiff's allegations are unsupported. Defendant LaFave determined that plaintiff was an STG threat based upon his personal possessions and activities with a subversive group. Plaintiff has failed to show that he was discriminated against.

Similarly, plaintiff alleges that he was retaliated against for practicing his religious beliefs. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Plaintiff was designated as an STG due to his activities associated with an STG group. Plaintiff cannot show that any action was taken against him because of his engagement in protected conduct.

Alternatively, it is recommended that defendants are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012

(6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held

>unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

>The Sixth Circuit has observed:
>
>A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d 425. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Plaintiff, in the opinion of the undersigned, has failed to show that his rights were violated by any of the named defendants.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #15) be granted and that this case be dismissed in its entirety.

The court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court discerns no good-faith basis for an appeal. Should the plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of

this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   August 8, 2006